## In re MARICELLI.
### No. 5389.

District Court, W. D. Louisiana, Shreveport Division.

April 4, 1938.

Supplemental Opinion May 28, 1938.

E. S. Prudhomme, of Natchitoches, La., for debtor.

Harold Moses, of New Orleans, La., for Federal Land Bank of New Orleans.

Arthur C. Watson, of Natchitoches, La., conciliation commissioner.

DAWKINS, District Judge.

This debtor failed to obtain the approval of a proposal for a composition or extension of his debts, and was adjudged bankrupt under subsection (s) of Section 75 of the Bankruptcy Law, 11 U.S.C.A. § 203(s). The little farm on which he lives with his family consists of twenty-seven (27) acres. The loan of the Federal Land Bank originally amounted to $800, but was scheduled by the debtor in the sum of $650, together with a second mortgage amounting to $450. Other debts made an aggregate on the schedules of $1,393.

Beginning with the year 1936, the commissioner fixed a rental of $110 per year. For that year the debtor turned over to the conciliation commissioner the sum of $21.-20, "being one-fourth of the value of the total crops produced on this property." He had a son in a C. C. C. Camp, who sent him $25 per month, which was the principal support of the debtor and his family. The debtor individually cultivated four acres and the total value of the crops raised thereon was $18. Seven or eight acres were cultivated by a tenant. The Federal Land Bank holding the first mortgage and a second mortgage creditor both moved to dismiss the proceeding, on the grounds, (1) that the debtor was not primarily engaged in farming; and (2) that he had not made any attempt to comply with the provisions of the Act. The commissioner recommended that the proceeding be not dismissed, reserving to the mortgagees the right to renew their motions "in the event the debtor does not pay into the court the stipulated rental for the year 1937". During the year 1937 the debtor cultivated about seven acres in cotton and five acres in corn. He does not appear to have leased any of the land and the amount paid to the commissioner was only $4.75. In neither hearing was the evidence taken by a stenographer and the above facts are gathered from the written reports of the commissioner on the hearing, which reports are verified by the signatures of the debtor, his attorney and the attorney for the Federal Land Bank. The recommendation of the commissioner on the last motion and after having had the results of the crop year of 1937, is as follows: "The debtor paid in only $21.20 during 1936 and only $4.75 during 1937, although a rental of $110.00 was fixed for both years. The debtor is much farther in debt than he was when these proceedings were filed. The payments made are not sufficient to pay even the interest on the first mortgage held by the Federal Land Bank. And there is also a second mortgage on this property on which nothing has been paid in several years. There appears no chance whatever of the debtor's rehabilitating himself, and consequently it is recommended that these proceedings be dismissed, or wound up in accordance with the provisions of subsection (s)".

No explanation appears to have been made for the failure to cultivate less than half of the land in 1937, the quantity or value of what was produced or what became of the balance of its proceeds, if any. It does seem that if the debtor is an able-bodied man and has a team (his schedules show that he had one horse and a mule, valued at $30 each) he could have himself, with the help of some day labor, cultivated about twenty acres of land in corn, and cotton. The duty was upon him to make a serious effort in this direction, and he cannot sit down, let the land or the major portion of it lie idle, pay practically nothing on his indebtedness and at the same time hold his creditors at bay with proceedings of this nature.

Before deciding whether I shall adopt the recommendation of the commissioner

to dismiss the proceeding or to liquidate the estate in bankruptcy, I shall order that the debtor appear before the commissioner and make affidavit as to how much land he cultivated, why he did not cultivate more, what was made,—that is, the kind of crops,—what was received for them, what expense, if any, was incurred and what he did with the entire proceeds. If he has any other witnesses who can verify these statements he should have them go before the commissioner and make similar affidavits. Copies should be furnished to the mortgagees, who in turn will be permitted to file any affidavits they see fit in reply to those of the debtor. This course is adopted for the reason no note of evidence was taken, the debtor was apparently without means to pay such expense and it had not been requested or the cost of making such record provided by any of the creditors. The fact that he owes more than his property is worth does not justify dismissal of his proceeding but the law requires that he pay the rental fixed by the commissioner unless good and sufficient reasons can be shown for his failure to do so. These affidavits must be furnished within five days after the commissioner notifies the debtor of this ruling.

Supplemental Opinion.

In a memorandum opinion, handed down on April 4, 1938, the court reviewed this matter on the report of the conciliation commissioner, who had recommended its dismissal or liquidation under the general provisions of the Bankruptcy Law. Since the facts as to what efforts were made to comply with the terms of a previous order fixing a rental of $110 per year, had not been taken down, and the statement of the commissioner in regard thereto was very meagre, the court directed that the debtor file within five days after notice of said ruling given by the commissioner, affidavits of himself and any other witnesses he might have "as to how much land he cultivated, why he did not cultivate more, what was made,—what kind of crops,—what was received for them, what expense, if any, was incurred and what he did with the entire proceeds."

The commissioner erroneously allowed the debtor fifteen days instead of five for filing said affidavits, but when this was called to his attention by the attorney for the Federal Land Bank, plaintiff in the motion to dismiss, a second notice was given, requiring the affidavits to be filed within five days from that date, which was done. In the meantime, ten days had elapsed and the mortgagee Bank protested against the allowance of this additional time. My view is that this mix-up cannot be attributed to the debtor and I shall treat the matter as if the affidavits were timely filed.

I quote from the affidavit of the debtor as follows: "That during the year 1937 he planted seven acres of his land in cotton, and nine acres in corn, and about one acre in truck. That he harvested ten barrels of corn, and one light bale of cotton. From the truck patch he got food for himself and family. That a drought hurt the corn and later in the year excessive rains hurt the cotton, which was in the bottom land. That on April 4th, there was a hail storm which cut the corn down and it had to be replanted. That affiant was unable to properly finance his crop, he could not get a seed loan and could not get advances from the merchants. That affiant's son was in C. C. C. camp and that was the reason affiant could not get a Government seed loan, as they said affiant was getting $25.00 per month out of it. That affiant got only a low price for such products as he did raise and got very little cash."

This does not comply with the court's order in that he does not show what was received for the crops, what the expenses were in making them and what he did with the same in detail. However, even if he had given these details, it is clear that the debtor will not be able to finance the growing of crops to meet any kind of rental on the property, and there does not appear to be any reasonable prospect that he ever will. The indebtedness to the Land Bank, as well as that of another creditor with a second mortgage, continues to pile up, and I do not believe Section 75, under the most liberal interpretation, contemplates that the creditors shall be stood off indefinitely under such circumstances, with no hope whatever of rehabilitating the debtor.

The proceedings will be dismissed and the mortgagees allowed to proceed with the foreclosure of their claims in the State Court, rather than through ordinary bankruptcy, as this appears to be the least expensive means of disposing of the matter.

Proper decree should be presented.